IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) ) ) | |
| v. | ) ) ) ) ) | 1:17-cr-114 (LMB/MSN) |
| JON LAWRENCE FRANK, | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

MEMORANDUM OPINION

This garnishment matter is back before the Court as a result of a remand from the Fourth Circuit which has directed the Court to determine the appropriate sum that can be withdrawn from the defendant's 401K retirement account under the writ of garnishment at issue.

I. BACKGROUND

Between 2007 and 2017, defendant Jon Lawrence Frank ("defendant" or "Frank") embezzled over $19 million dollars from NCI Information Systems, Inc. ("NCI"), where he served as vice-president and controller. In June of 2017, Frank waived indictment and pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. On September 8, 2017, among other sanctions, he was sentenced to 78 months in prison and ordered to pay over $19 million in restitution to NCI, of which over $12 million remained outstanding as of September 2021. [Dkt. No. 116] at 2.

On September 5, 2019, in its effort to recover the restitution amount, the government filed an Application for Writ of Continuing Garnishment pursuant to 28 U.S.C. § 3205(b)(1) against defendant, naming Charles Schwab Corporation as garnishee ("Schwab" or "garnishee") [Dkt. No. 60]. Schwab holds a "401(k) account in the name of Jon Frank" under NCI's 401(k) plan with Schwab. [Dkt. No. 65]. Frank filed an opposition to the writ. On March 4, 2020, after hearing oral argument, a magistrate judge issued a Report and Recommendation ("Report") in which he found that "the funds in the defendant's retirement account are subject to seizure by the government" to enforce a restitution order, and because the government would step into defendant's shoes, it could "require a lump-sum liquidation of the 401(k) account." [Dkt. No. 76] at 14. Defendant timely filed an objection to the magistrate judge's ruling. On review, the Report was adopted, except for an additional finding that because Frank was too young to withdraw the funds without a penalty, 10% of the funds in the retirement account should be withheld to "pay any penalties or additional taxes associated with liquidating that account." [Dkt. No. 83]. Frank appealed that decision, which the Fourth Circuit affirmed in part and reversed in part, holding that the government can garnish the funds in Frank's 401(k) account but vacating and remanding the ruling as to the amount of funds which should be withheld. Specifically, the Fourth Circuit directed the Court to calculate the garnishment amount by determining the extent of Frank's property interest in his 401(k) account, which would be the "full amount to which he has a present, unconditional right to access." United States v. Frank, 8 F.4th 320 (4th Cir. 2021) (quoting United States v. Sayyed, 862 F.3d 615, 619 (7th Cir. 2017)) (internal quotation marks omitted). To make that calculation, the Court must determine (1) "whether the terms of Frank's plan in fact require Schwab to withhold 20 percent of any present withdrawal" and (2) "whether the government's proposed lump-sum distribution would trigger an early withdrawal penalty"

under either the terms of Frank's retirement plan or the tax law. Id. at 333. The Fourth Circuit made clear that its discussion of tax penalties did not refer to "tax obligations on the newly withdrawn funds" that "Frank would like to avoid triggering;" rather, the only tax penalties of concern are those that prevent Frank's present right of access. Id. at 332.

## II. DISCUSSION

In post-remand briefing, the government argued that the 10% early withdrawal penalty would not apply under "Tax Court rulings and IRS guidance" on the facts of this case. [Dkt. No. 116] at 1. Although it declined to take a position on whether a 20% withholding rule would apply, the government offered to settle the issue by agreeing to take only 80% of the Schwab account. Id. Defendant rejected the government's settlement offer, but conceded that he would not have a right to receive 100% of the funds in the Schwab account. [Dkt. No. 117] at 1. Instead, he argued that he would only be able to receive 64-65% of the funds because Schwab could be obligated to withhold 20% for federal income taxes, 10% for the early withdrawal penalty, and 5%-6% for state income taxes. Id. at 2.

As a practical matter, none of the funds in Frank's 401(k) account will be disbursed to him. Rather, they will be divided between compensating NCI for its losses via the restitution order and satisfying federal and state taxing authorities pursuant to any tax obligations that are triggered by the lump-sum withdrawal. These tax obligations are likely to be significant because withdrawing all the funds at once appears to place defendant in the highest federal income tax bracket. As such, defendant urges the Court to limit the withdrawal order so that there are sufficient funds in the account to pay the taxes triggered by the withdrawal.

### A. Relevant Authority

The terms of defendant's 401(k) plan dictate the outcome of the Court's analysis. Although defendant's 401(k) plan allows for both pre-tax and after-tax (Roth) contributions,

3

defendant states, and it appears uncontested, that he has put only pre-tax earnings into the account. [Dkt. No. 71-1] at 3. The Summary Plan Description explains that pre-tax contributions are subject to a mandatory 20% withholding upon lump-sum withdrawal, which the Administrator (in this case, Frank's former employer, NCI, Id. at 1) is required to remit to the Internal Revenue Service to be credited against relevant income taxes.

> **20% Withholding on Taxable Distributions**
> If you have your benefit paid to you and it's eligible to be rolled over, you only receive 80% of the benefit payment. The Administrator is required to withhold 20% of the benefit payment and remit it to the Internal Revenue Service as income tax withholding to be credited against your taxes. If you receive the distribution before you reach age 59 ½, you may also have to pay an additional 10% tax. ...

[Dkt. No. 71-1] at 12. The Summary Plan Description explains that this provision "is only a brief explanation of the law and IRS rules and regulations," and that a withdrawing party would receive "additional information from the Administrator at the time of any benefit distribution." Id.

In fact, the more detailed Plan documents provided by the government state that the amount of income tax withholding is determined in the "sole discretion" of Schwab (the Trustee), pursuant to information furnished by NCI (the Administrator or the Company) that will enable Schwab to "withhold from each distribution the amount necessary to pay Federal and state income taxes due." [Dkt. No. 116-1] at 185 ("[T]he Trustee [Schwab] may, in its sole discretion, and to the extent required under applicable law, withhold from any distribution to any payee such sum as the Trustee may reasonably estimate is necessary to cover required Federal and state taxes which are, or may be, assessed with regard to the amount distributable to such payee."). If NCI fails to provide adequate tax withholding information, "the Trustee will have no obligation to withhold any amount to cover the payment of such taxes." Id. In other words, withholding happens at the direction of NCI:

4

> The Trustee <u>is authorized</u>, to the extent required under applicable law, to withhold from distributions to any payee an amount that the Trustee determines is necessary to cover federal and state taxes, and the Trustee <u>is required</u> to withhold such amounts <u>if so directed by the Administrator</u>.[...]
>
> The Trustee shall not be liable for the proper application of any part of the Plan or Trust if distributions or transfers are made in connection with the written directions of the Administrator including any distribution made pursuant to a domestic relations order which the Administrator has determined to be qualified...

<u>Id.</u> at 193 (emphasis added).

The "additional 10% tax" penalty mentioned in the Summary Plan Description ([Dkt. No. 71-1] at 12) derives from the Federal tax code:

> **(t) 10-percent additional tax on early distributions from qualified retirement plans.**
>
>> (1) **Imposition of additional tax**. If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c) [26 USCS § 4974(c)]), the taxpayer's tax under this chapter [26 USCS §§ 1 et seq.] for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

26 U.S.C. § 72; however, there are exceptions to the application of this penalty:

> (2) **Subsection not to apply to certain distributions**. Except as provided in paragraphs (3) and (4), paragraph (1) shall not apply to any of the following distributions:
>
>> (A) In general. Distributions which are—
>>
>> * * *
>>> (vii) made on account of a levy under section 6331 [26 USCS § 6331] on the qualified retirement plan[.]

<u>Id.</u> The referred code section, 26 U.S.C. § 6331, governs tax liens: ("If any person liable to pay any tax neglects or refuses to pay the same ...it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person."). This exclusion of tax liens from the 10% penalty is important because, according to the federal code, a restitution order such as the one at issue has the same impact on property as a tax lien would:

5

> "[A]n order of restitution made pursuant to section[]…3663A… of this title, is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code[.]"

18 U.S.C. § 3613(c).

Finally, the government has chosen to use a writ of garnishment, governed by 28 U.S.C. § 3205, to collect on the restitution order in this case. That section specifically provides that except for "judicial orders" and other garnishments made "for the support of a person," a "garnishment issued under this section shall have priority over writs [garnishment or levy] which are issued later in time." 28 U.S.C. § 3205 (8).

## B. <u>Analysis</u>

1. <u>Income tax withholding of 20%</u>

Although the Summary Plan Description states that the Administrator, which is NCI, is "required to withhold 20% of the benefit payment" and remit it to the IRS against any tax liability for a lump-sum withdrawal, [Dkt. No. 71-1] at 12, the more detailed Plan documents clarify that this 20% is an estimate, and in fact, a different percentage may be withheld at the trustee's discretion. The detailed Plan documents also explain that Schwab, "in its sole discretion" and pursuant to information furnished by NCI, may withhold from any distribution any such sum as Schwab may "reasonably estimate is necessary" to cover required federal and state taxes. [Dkt. No. 116-1] at 185. Further, "[Schwab] is required to withhold such amounts if so directed by [NCI]." <u>Id.</u> at 193.

The Fourth Circuit directed this Court to determine whether "the terms of Frank's plan in fact require Schwab to withhold 20 percent of any present withdrawal." If so, those mandatory terms would affect how much Frank, and therefore the government which steps into his shoes, can actually withdraw from the account. Although 20% is described as the amount to be

6

withheld, the Plan documents make clear that Schwab, in conjunction with information furnished by NCI, has the sole discretion to withhold any amount it estimates is "necessary to cover required Federal and state taxes," which may be more or less than 20%. [Dkt. No. 116-1] at 185. Accordingly, Schwab as garnishee shall be ordered to consult with NCI and advise the Court and the parties as to the amount it estimates it will withhold to cover the federal and state taxes which will be triggered by the lump-sum withdrawal.[1] The remainder of the funds will be turned over to the government under the writ. Should the amount withheld turn out to be less than needed to cover defendant's taxes, the Internal Revenue Service may seek to collect the balance from him. Should the amount withheld turn out to be more than needed, any excess payment must be turned over to the government for restitution.

2. Early-withdrawal penalty of 10%

The Summary Plan Description indicates that an account owner who withdraws his 401(k) funds before turning 59 ½ "may also have to pay an additional 10% tax." [Dkt. No. 71-1] at 12. As a matter of law, the Court concludes that this tax does not apply to this withdrawal because the funds will never go into Frank's custody (he does not "receive the distribution", id. at 12), and because a withdrawal pursuant to a garnishment to satisfy a restitution order is expressly exempted from the statute that covers the 10-percent additional tax on early distributions from qualified retirement plans. See 26 U.S.C. § 72 (t)(2)(A)(vii).

The defense argues that the question before the Court is not whether the tax will be imposed in this situation, but whether the defendant would have to pay it if he were withdrawing

---

[1] The Court recognizes the unique conflict of interest presented here. NCI, as the victim of the crime, stands to benefit from the funds that go to restitution. At the same time, NCI is responsible for providing Schwab with the information needed to calculate the proper amount to withhold for federal and state taxes.

7

the funds, because the government is required to "step into [defendant's] shoes." Frank, 8 F.4th at 331 (quoting United States v. Nat'l Bank of Com., 472 U.S. 713, 725 (1985)). The Court will not engage in this fiction proposed by defendant. In reality, an exception to the 10% penalty applies because defendant is under an order to pay restitution and the withdrawal is being made to satisfy a portion of that order. Accordingly, Schwab should not withhold an additional 10%.

3. State income tax of about 5%

Finally, defendant urges the Court to mandate that Schwab withhold additional funds so that Frank can also meet any state income tax obligations that accrue upon lump-sum withdrawal. This argument is moot as the Court has already concluded that the Plan requires Schwab to withhold funds to address both federal and state taxes. [Dkt. No. 116-1] at 185.

### III. CONCLUSION

For the reasons discussed above, the Court finds that defendant has a present, unconditional right to access all the funds in his 401(k) account that are not withheld by Schwab pursuant to Schwab's estimates of the federal and state income taxes defendant must pay on the withdrawal. This withholding may be more or less than the standard 20% that is suggested by the Summary Plan Description. To determine the actual amount of funds which may be withdrawn, Schwab will be ordered to provide the Court and the parties with a calculation of the amount it will withhold to cover the federal and state taxes due. An order directing Schwab to perform that calculation will issue with this Memorandum Opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

Entered this 22 day of February, 2022.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge